## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**ROLANDO RODRIGUEZ AND**
**THE BRIDGE CONSULTING FIRM, LLC**                                  **PLAINTIFFS**

**V.**                                                                   CAUSE NO. _____1:21-cv-125-LG-JCG_____

**SCOTT M. FAVRE PUBLIC ADJUSTER, LLC**
**SCOTT M. FAVRE and CINDY L. FAVRE;**
**JOHN AND JANE DOE DEFENDANTS A, B,**
**C, D, AND E**                                                           **DEFENDANTS**

### COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiffs, Rolando Rodriguez and the Bridge Consulting Firm, LLC, file the following Complaint against Scott M. Favre Public Adjuster, LLC, Scott M. Favre, individually and Cindy L. Favre, individually, as follows:

### PARTIES

1.   Plaintiff Rolando Rodriguez is an individual resident of the State of Florida and is the rightful owner of 100% of the membership interest in The Bridge Consulting Firm, LLC, a Florida limited liability company. Plaintiffs may be served with Answer to this Complaint or any other pleadings or notice through undersigned counsel of record.

2.   Defendant, Scott M. Favre Public Adjuster, LLC ("SMFPA") is a Mississippi limited liability company licensed to do business in the state of Mississippi with a principal place of business in Kiln, Mississippi 39556.   SMFPA may be served with process on its registered agent and manager, Cindy L. Favre, 7044 Stennis Airport Rd., Kiln, MS 39556 or at her residence, 5161 Nicola Road, Kiln, MS.

1

3.   Scott M. Favre is an individual who resides in Hancock County, Mississippi. He may be served with process at his business address 7044 Stennis Airport, Kiln, Mississippi 39566 or wherever he may be found.

4.   Cindy L. Favre is an individual who resides in Hancock County, Mississippi. She may be served with process at her business address 7044 Stennis Airport, Kiln, Mississippi 39566 or wherever she may be found.

5.   Defendants, John and Jane Doe A, B, C, D, and E are other individuals and entities who may be liable to Plaintiffs for the acts and omissions described in this Complaint, including but not limited to individuals and/or entities to whom the named Defendants transferred assets in which Plaintiffs had a vested interest. Plaintiffs will amend their Complaint once the true identities and liability of John and Jane Doe Defendants are ascertained.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.  There exists complete diversity of citizenship between Plaintiffs on the one hand, and Defendants on the other.  As stated above, Rolando Rodriguez is the owner of 100 % of the membership interest in The Bridge Consulting Firm, LLC. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

7.   This Court has personal jurisdiction over all Defendants.  This is a matter involving breach of contract, breach of fiduciary duty, misrepresentations and fraud, and interference with contract, which incidents occurred in whole or in part within the Southern District of Mississippi.

8.   Venue is appropriate under 28 U.S.C. § 1391(a)(2), as set forth below, as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

2

## FACTS GIVING RISE TO THIS COMPLAINT

9.  On or about September 10, 2017, Hurricane Irma made landfall in Florida. Shortly thereafter, Scott Favre contacted Rolando Rodriguez to discuss the possibility of working together to identify and develop leads in Florida for potential clients for Scott M. Favre Public Adjuster, LLC ("SMFPA").

10. Scott Favre stated to Rodriguez that SMFPA wished to engage in contracts with school districts to adjust insurance claims in Florida arising from Hurricane Irma for a 10% commission or contingency fee to be paid to SMFPA. SMFPA also wished to contract with such districts and other clients for FEMA Public Assistance grant management services.

11. Scott Favre felt that Rodriguez was a good fit to work with his company as Rodriguez had 17-years' experience in educational sales in the State of Florida and Puerto Rico and through this experience had developed relationships with multiple school districts in Florida.

12. On September 21, 2017, Rodriguez was provided a written agreement for "jointly referring clients" for SMFPA for which he would be compensated 2.5% of the 10% fee due to SMFPA, plus $1,000 per meeting. See copy of Agreement attached hereto as Exhibit "1" ("Florida Agreement").

13. Rodriguez understood this agreement to apply only to their business dealings in the State of Florida when he signed this Agreement on September 22, 2017. Ex. "1".

14. Through services rendered by Rodriguez under the Florida Agreement, SMFPA entered into a contract with Polk County Public Schools. On information and belief, SMFPA and/or Favre earned at least $2,000,000 in fees from that contract, of which Rodriguez is owed at

least $50,000 under the Florida Agreement. However, SMFPA has refused and failed to pay Rodriguez that amount.

15. While Rodriguez and Scott Favre were operating under the Florida Agreement, Hurricane Maria struck Puerto Rico on September 19, 2017. Scott Favre requested that Rodriguez use his contacts on the island of Puerto Rico to begin opening doors to potential clients for SMFPA to act as their public adjuster.

16. Favre also requested assistance with SMFPA's FEMA grant management work in Puerto Rico.

17. In late September 2017, Rodriguez began making contacts with entities in Puerto Rico on behalf of SMFPA as requested by Scott Favre. Throughout the month of October 2017, Rodriguez continued to utilize his contacts in Puerto Rico to identify and solicit potential clients in Puerto Rico on behalf of SMFPA.

18. On October 22, 2017, Rodriguez traveled by air to Puerto Rico and while on the island personally met with multiple influential contacts and potential clients for SMFPA.

19. On November 1, 2017, SMFPA officially authorized Scott Favre to conduct business on its behalf, including entering the LLC into contracts. See corporate resolution of Scott M. Favre Public Adjuster, LLC attached as Exhibit "2".

20. In November 2017, around the Thanksgiving holiday, Scott Favre and Rodriguez discussed terms for their agreement with regard to the ongoing business in Puerto Rico ("Puerto Rico Claims"). These discussions were confirmed by an email dated December 11, 2017 from Rodriguez to Scott Favre. See email dated 12/11/17 attached hereto as Exhibit "3".

21. Favre and Rodriguez agreed that, as compensation for his services regarding potential client referrals, SMFPA would pay Rodriguez 10% of all fees received by SMFPA for public adjusting work in Puerto Rico. Ex. "3".

22. Favre also asked Rodriguez to stay and work full time in Puerto Rico to be Favre's/SMFPA's man on the ground, since Favre did not speak the language, which Rodriguez did. Favre agreed to pay for Rodriquez's expenses incurred while living in Puerto Rico.

23. Favre and Rodriguez agreed that, as compensation for consulting in the area of FEMA grant eligibility and management, SMFPA would pay a flat amount for each hour worked by any consultant billed to any of SMFPA's FEMA Public Assistance grant management clients in Puerto Rico.

24. The terms of the agreement for Puerto Rico Claims included payment of $100,000.00 in advance payments from SMFPA to Rodriguez, $20,000.00 of which was to be paid immediately with the balance to be paid biweekly in increments of $7,500.00. Ex. "3". SMFPA was also to reimburse expenses to Rodriguez under this arrangement. Ex. "3".

25. The terms of the agreement between SMFPA and Rodriguez for the Puerto Rico Claims were never reduced to a separate written and signed document, but the parties performed pursuant to such verbal agreement based on the terms discussed from and after December 2017 through 2018, thereby modifying the prior written Florida Agreement.

26. In reliance on the economic promise of these agreements, Rodriguez retired from his job in educational sales and committed 100% of his time to development of SMFPA business opportunities.

27. Rodriguez formed The Bridge Consulting Firm, LLC to provide the services agreed upon, but the initial checks from SMFPA for the agreed upon retainer/advance and expense reimbursements were made payable to Rolando Rodriguez. See SMFPA check number 6722 and check number 6754 attached as Exhibit "4".

28. The verbal modification of the Florida Agreement regarding Puerto Rico Claims required SMFPA to pay Plaintiffs a percentage of its Puerto Rico-derived public adjuster fees *as SMFPA received those fees*. SMFPA was required to give Rodriguez immediate notice whenever SMFPA received a public adjusting fee from a Puerto Rico client. Such notice allowed Rodriguez to prepare an invoice, which the verbal agreement required SMFPA to pay promptly.

29. Plaintiffs provided referrals of potential Puerto Rico clients to SMFPA as required by their agreement and fully satisfied all contractual obligations to provide ongoing referrals of potential clients to SMFPA.

30. Plaintiffs also provided FEMA grant consulting services to SMFPA as required by the FEMA Consulting agreement. Plaintiffs fully satisfied all contractual obligations to provide consulting services regarding FEMA grant management and eligibility.

31. SMFPA received adjusting fees from at least two Puerto Rico clients in Summer 2018 and as required by the verbal modifications of the Florida Agreement for Puerto Rican work, paid Plaintiffs the agreed upon compensation in the amount of 10% of SMFPA's adjusting fees.

32. On or about April 26, 2018, SMFPA was paid a $7,000,000.00 fee from its client the Puerto Rico Aqueduct and Sewer Association ("PRASA"), yet SMFPA did not inform Plaintiffs of the receipt of this fee. See Notice of Disbursement to Public Adjuster Agreement Contract

Number 2018-000199-B attached hereto as Exhibit "5". SMFPA owes Plaintiffs $700,000.00 as per their agreement, but SMFPA has refused and failed to pay that amount.

33. On information and belief, in the Summer of 2018, SMFPA received a fee in the amount of $300,000.00 from its client, the Municipality of Humacao, Puerto Rico. SMFPA failed to give the required notice of the fee to Plaintiffs. SMFPA owes Plaintiffs $30,000.00 as per their agreement, but SMFPA has refused and failed to pay that amount.

34. In August 2018, SMFPA received a fee in the amount of $3,500,000.00 from its client, PRASA. See Ex. "5". SMFPA failed to give the required notice of the fee to Plaintiffs. SMFPA owes Plaintiffs $350,000.00 as per their agreement, but SMFPA has refused and failed to pay that amount.

35. In September 2018, Scott Favre asked Rodriguez to go to work for him in North Carolina where Hurricane Florence had recently struck. Scott Favre directed Rodriguez to deal with Keith Ladner, a person represented to be a business associate of Favre's, with regard to the North Carolina arrangement. A written agreement was executed between SMFPA and Bridge Consulting for the North Carolina adjusting work on September 21, 2018. See Agreement attached hereto as Exhibit "6" ("North Carolina Agreement").

36. Pursuant to the September 2018 North Carolina Agreement Rodriguez left Puerto Rico and went to North Carolina. In December 2018, Scott Favre asked that Rodriguez not return to Puerto Rico because "things [were] not going well." Scott Favre told Rodriguez that he had "not gotten paid on anything to date" and was "concerned about losing money on the island."

37. On information and belief, in early to mid-2019, SMFPA received a fee in the amount of $30,000,000.00 from its client, the Puerto Rico Port Authority. SMFPA failed to give the

required notice of the fee to Plaintiffs. SMFPA owes Plaintiffs $3,000,000.00 as per their agreement, but SMFPA has refused and failed to pay that amount.

38. On or about July 23, 2019, SMFPA received a fee in the amount of $10,500,000.00 from its client, PRASA. See Ex. "5". SMFPA failed to give the required notice of the fee to Plaintiffs. SMFPA owes Plaintiffs $1,050,000.00 as per their agreement, but SMFPA has refused and failed to pay that amount.

39. Upon information and belief, SMFPA has, besides the fees listed herein, received numerous other public adjusting fees from its Puerto Rico clients amounting to more than $80 million, so that SMFPA owes Plaintiffs approximately $8 million under the terms of their agreement regarding Puerto Rican adjusting work. However, SMFPA has refused and failed to give Plaintiffs proper notice as required by the verbal agreement and has failed to pay Plaintiffs the agreed compensation.

40. SMFPA is also expected to receive public adjusting fees from Puerto Rico clients in the future. The verbal agreement for Puerto Rico Claims requires SMFPA to pay Plaintiffs 10% of all public adjusting fees SMFPA will receive or has received from Puerto Rico clients.

41. SMFPA has also refused and failed to pay Plaintiffs the compensation required by the FEMA Consulting Contract. Upon information and belief, SMFPA has billed and been paid for over 75,000 hours for Consultants/Senior Consultants for time worked on SMFPA's FEMA grant projects in Puerto Rico. However, SMFPA has failed and refused to pay Plaintiffs any compensation as required by the FEMA Consulting Contract. SMFPA owes Plaintiffs at least $1,125,000.00 in fees under the FEMA Consulting Contract.

42. On September 11, 2019 Rodriguez wrote to Cindy and Scott Favre on behalf of The Bridge Consulting Group demanding at least a partial payment for sums due and owing under the terms of the agreements between them. See correspondence dated September 11, 2019 attached as Exhibit "7". Attached to this correspondence was an invoice in the amount of $2,350,000.00 for professional services rendered on behalf of SMFPA in Puerto Rico. To date, no payments have been made on this invoice.

## CLAIMS

### Count 1-Breach of Contract—Florida Agreement

43. Each of the preceding paragraphs are incorporated herein.

44. Scott Favre had apparent and actual authority to act on behalf of SMFPA in the formation of the Agreement for Florida Claims. Ex. "1".

45. Scott Favre on behalf of SMFPA presented an offer to Rodriguez who accepted the offer as presented in the Agreement attached as Exhibit "1". Rodriguez' acceptance is evidenced by his signature. Ex. "1".

46. The Agreement sufficiently describes the services to be performed; the cost of such services and the duration in which the services would be provided.

47. SMFPA breached the Agreement for Florida Claims by (1) refusing and failing to give Plaintiffs the required notice when SMFPA received a Florida derived public adjusting fee and (2) refusing and failing to pay Plaintiffs compensation as agreed through under the terms of the Agreement.

48. Plaintiffs have incurred damages in the form of the loss of the benefit of the bargain as to the contract. Plaintiffs are entitled to compensation due under the Florida Agreement, namely,

2.5% of all Florida puglic adjusting fees received by SFMPA since September, 2017, as well as 2.5% of all Florida public adjusting fees SFMPA receives in the future.

## Count 2-Breach of Contract—Puerto Rico Agreement

49. Each of the preceding paragraphs are incorporated herein.

50. Scott Favre had apparent and actual authority to act on behalf of SMFPA in the formation of the Agreement for Florida Claims. Ex. "1".

51. Scott Favre on behalf of SMFPA presented an offer to Rodriguez who accepted the offer as presented in the Agreement attached as Exhibit "1". Rodriguez' acceptance is evidenced by his signature. Ex. "1".

52. The Agreement sufficiently describes the services to be performed; the cost of such services and the duration in which the services would be provided.

53. The Agreement attached as Exhibit "1" was modified by oral agreement and assent when Scott Favre, on behalf of SMFPA, requested that Rodriguez perform services in Puerto Rico in late-September 2017 and Rodriguez accepted the assignment, began performing the work, and temporarily relocated to Puerto Rico. The modified Agreement for Puerto Rico Claims required SMFPA to pay Plaintiffs a commission of 10% of all fees paid to SMFPA for public adjusting work in Puerto Rico. All other terms of the Agreement remained the same.

54. SMFPA breached the Agreement for Puerto Rico Claims by (1) refusing and failing to give Plaintiffs the required notice when SMFPA received a Puerto Rico-derived public adjusting fee and (2) refusing and failing to pay Plaintiffs compensation as agreed through oral modification of the Agreement.

55. Plaintiffs have incurred damages in the form of the loss of the benefit of the bargain as to the contracts. Plaintiffs are entitled to compensation due under the contracts, namely, 10% of all Puerto Rico public adjusting fees received by SFMPA since October 2018, as well as 10% of all Puerto Rico public adjusting fees SFMPA receives in the future.

## Count 3-Breach of Contract—FEMA Consulting Contract

56. Each of the preceding paragraphs are incorporated herein.

57. Scott Favre had apparent and actual authority to act on behalf of SMFPA in the formation of the FEMA Consulting Contract.

58. The Plaintiff Plaintiffs offered to perform the services described in the FEMA Consulting Contract.

59. The contract sufficiently describes the services to be performed; the cost of such services and the duration in which the services would be provided.

60. Scott Favre on behalf of SMFPA accepted the offer as presented in the FEMA Consulting Contract. His acceptance is evidenced by his signature.

61. SMFPA billed and was paid for over 75,000 hours of FEMA work in Puerto Rico. SMFPA owes Plaintiffs $15 for each such hour.

62. SMFPA breached the FEMA Consulting Contract by refusing and failing to pay Plaintiffs compensation as set out in the Contract.

63. Plaintiffs have incurred damages in terms of lost compensation due under the FEMA Consulting Contract.  Plaintiffs are entitled to the benefit of the bargain. The benefit of the bargain is $15 for each hour billed by any Consultant or Senior Consultant for time worked on any of

SMFPA's FEMA grant projects in Puerto Rico since March 15, 2018 to the present time, as well as in the future.

### Count 4-Tortious Breach of Contract—Florida Agreement

64. Each of the preceding paragraphs are incorporated herein.

65. SMFPA intentionally breached the Agreement regarding Florida Claims.

66. SMFPA abused its business and contractual relationship with Plaintiffs. Because SMFPA obtained, through utilization of Plaintiffs' contacts, insurance adjusting agreements with Polk County Public Schools, and/or other clients in Florida, SMFPA had absolute control over the revenue generated through the efforts of Plaintiffs. As such SMFPA was able to demand the work be done in advance of payment. SMFPA never intended to honor its agreement.

67. SMFPA has not only stiffed Plaintiffs, but also stiffed similarly situated service providers, demonstrating a pattern and practice that rises the level of malfeasance.

68. SMFPA did not breach the Agreement because it did not receive payment from clients or their insurance companies. Rather, SMFPA breached these contracts due to the greed of its members, principals and agents.

69. The breach of the Agreement regarding Florida Claims was intentional and accompanied by abuse and such gross negligence as to constitute a separate and independent tort.

70. As a direct and proximate cause of the tortious breach of contract, Plaintiffs are entitled to recover damages from SMFPA in addition to the benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.

**Count 5-Tortious Breach of Contract—Puerto Rico Agreement**

71. Each of the preceding paragraphs are incorporated herein.

72. SMFPA intentionally breached the Agreement regarding Puerto Rico Claims.

73. SMFPA abused its business and contractual relationship with Plaintiffs. Because SMFPA obtained, through utilization of Plaintiffs' contacts, insurance adjusting agreements with various clients in Puerto Rico, SMFPA had absolute control over the revenue generated through the efforts of Plaintiffs. As such SMFPA was able to demand the work be done in advance of payment. SMFPA never intended to honor its agreement.

74. SMFPA has not only stiffed Plaintiffs, but also stiffed similarly situated service providers, demonstrating a pattern and practice that rises the level of malfeasance.

75. SMFPA did not breach the Agreement because it did not receive payment from clients or their insurance companies. Rather, SMFPA breached these contracts due to the greed of its members, principals and agents.

76. The breach of the Agreement regarding Puerto Rico Claims was intentional and accompanied by abuse and such gross negligence as to constitute a separate and independent tort.

77. As a direct and proximate cause of the tortious breach of contract, Plaintiffs are entitled to recover damages from SMFPA in addition to the benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.

**Count 6- Tortious Breach of Contract— FEMA Consulting Contract**

78. Each of the preceding paragraphs are incorporated herein.

79. SMFPA breached the FEMA Consulting Contract intentionally.

80. SMFPA abused its business and contractual relationship with Plaintiffs. Because SMFPA had insurance adjusting agreement with various clients in Puerto Rico, SMFPA had absolute control over the revenue generated through the efforts of Plaintiffs. As such, SMFPA was able to demand the work be done in advance of payment. SMFPA never intended to honor its agreement.

81. SMFPA has not only stiffed Plaintiffs, but also stiffed similarly situated service providers, demonstrating a pattern and practice that rises the level of malfeasance.

82. SMFPA did not breach the FEMA Consulting Contract because it did not receive payment from clients or their insurance companies. Rather SMFPA breached these contracts due to the greed of its members, principals and agents.

83. The breach of the FEMA Consulting Contract was intentional and accompanied by abuse and such gross negligence as to constitute a separate and independent tort.

84. As a direct and proximate cause of the tortious breach of contract, Plaintiffs are entitled to recover damages from SMFPA in addition to the benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.

### Count 7-Breach of the Implied Covenant of Good Faith and Fair Dealing

85. Each of the preceding paragraphs are incorporated herein.

86. Every contract governed by Mississippi law contains an implied covenant of good faith and fair dealing in both the performance and enforcement of the contract.

87. SMFPA breached the implied covenant of good faith and fair dealing by intentionally failing to perform under the Florida Agreement and/or the modified Agreement and the FEMA Consulting Contract with regard to Puerto Rico Claims.

88. SMFPA's breaches of the contracts with Plaintiffs illustrate a pattern of breaches wherein SMFPA employs the services of others to develop clients for its public adjusting business and then unilaterally refuses to remit payment for commissions due on fees paid by clients generated in part or in whole by services provided by persons and entities such as the Plaintiffs.

89. The breach of the duty of good faith and fair dealing was intentional and accompanied by abuse and such gross negligence as to constitute a separate and independent tort.

90. As a direct and proximate cause of SMPA's breach of the duty of good faith and fair dealing, Plaintiffs are entitled to recover damages from SMFPA in addition to the benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.

**Count 8- Fraudulent Inducement**

91. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

92. Scott Favre, with the authority of SMFPA, on the dates and times referenced above represented to Plaintiffs that in exchange for traveling to Puerto Rico and developing clients for SMFPA's public adjusting business, Plaintiffs would be paid a retainer/advance, expenses, and 10% of all sums received by SMFPA in Puerto Rico. Favre knew his representations to be untrue,

15

but made them for the purpose of inducing Plaintiffs to enter into an agreement to perform work in Puerto Rico for SMFPA, which work Plaintiffs did perform.

93. In reasonable reliance on Favre's/SMFPA's promises, Plaintiffs introduced Favre to Plaintiffs' contacts in Puerto Rico, traveled to and physically relocated to Puerto Rico, and performed the services requested by Favre/SMFPA in Puerto Rico.

94. As a result of the fraudulent inducement to enter into an agreement with regard to Puerto Rico Claims for which they were not paid, Favre/SMFPA have been financially enriched to the financial detriment of Plaintiffs. Plaintiffs have suffered damages for which SMFPA is responsible.

95. As a direct and proximate cause of SMPA's fraudulent inducement, Plaintiffs are entitled to recover damages from SMFPA in addition to the benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.


**Count 9- Promissory Estoppel**

96. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

97. Scott Favre promised Rodriguez that in exchange for traveling to Puerto Rico and developing clients for SMFPA's public adjusting business, that SMFPA would pay him a retainer/advancement, reimburse his expenses, and pay to him or The Bridge Consulting Firm 10% of all sums received by SMFPA in Puerto Rico.

16

98. Favre intended that Rodriguez would rely on his promises and travel to Puerto Rico and perform work there for SMFPA. In reliance upon Favre's promises, Rodriguez traveled from away from his home and family in Florida to Puerto Rico, took up temporary residence in Puerto Rico, and performed the requested work by developing clients for Favre to sign to contracts with SMFPA.

99. Through Favre's promises, SMFPA entered into a contract with Rodriguez. Should this court refuse to enforce it, the court would be virtually sanctioning the perpetuation of fraud, or other injustice.

### Count 10- Quantum Meruit / Unjust Enrichment

100.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

101.    Pleading alternatively, if it is determined that there was no contract between SMFPA and Plaintiffs for the work on Puerto Rico Claims performed by Plaintiffs, then Plaintiffs are entitled to recover from SMFPA and/or Favre under *quantum meruit*.

102.    Rodriguez rendered valuable services to SMFPA and Favre, as a result of which SMFPA and Favre received tens of millions of dollars in payments from Puerto Rican entities and/or their insurers and/or FEMA. Thus, Plaintiffs' services were clearly accepted, used and enjoyed by SMFPA and Favre. Plaintiffs, in performing such services, expected to be paid by SMFPA and/or Favre.

103.    SMFPA and/or Favre are in possession of money which in good conscience and justice they should not be permitted to retain. Rather, the court must order SMFPA and/or Favre to remit payment to Plaintiffs under the doctrine of *quantum meruit*.

## Count 11- Equitable Estoppel

104.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

105.    Scott Favre, with the authority of SMFPA, represented to Plaintiffs that in exchange for traveling to Puerto Rico and developing clients for SMFPA's public adjusting business, Plaintiffs would be paid a salary, expenses, and 10% of all sums received by SMFPA in Puerto Rico. Favre knew his representations to be untrue, but concealed the true facts from Plaintiffs for the purpose of inducing Plaintiffs to enter into an agreement to perform work in Puerto Rico for SMFPA, which work Plaintiffs did perform.

106.    Scott Favre, with the authority of SMFPA, engaged in conduct and acts, language and silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that his representations or silence, or concealment be relied upon, with the Plaintiffs ignorance of the true facts, and reliance to their damage upon such representations or silence of Scott Favre.

107.    In reliance on Favre's representations and concealments, Plaintiffs materially changed their position by leaving Rodriguez's home and family in Florida, relocating to Puerto Rico, introducing Favre to Plaintiffs' contacts in Puerto Rico, and performing services for Favre in Puerto Rico.

108.    Scott Favre is individually liable for all damages proximately caused by Plaintiffs' reliance on his aforesaid conduct. Further, Favre is equitably estopped from denying the promises made to Plaintiffs and the compensation due to Plaintiffs.

**Count 12- Fraud**

109.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

110.    On the dates and times discussed above, Scott Favre represented to Plaintiff Rodriguez that in exchange for traveling to Puerto Rico and developing clients for SMFPA's public adjusting business, that SMFPA would pay him a retainer/advance, reimburse his expenses, and pay to him or The Bridge Consulting Firm 10% of all sums received by SMFPA in Puerto Rico. Favre understood these representations to be material to Rodiguez.

111.    Favre knew his representations to Rodriguez concerning payment of 10% of all fees received by SMFPA for public adjusting work performed in Puerto Rico to be untrue, but made such representations to Rodriguez with the intent that Rodriguez would travel from his home and family in Florida to Puerto Rico, temporarily relocate to Puerto Rico, and perform work and services there for SMFPA. Rodriguez was not aware that such representations were untrue and relied upon them. As a result, Rodriguez suffered consequent and proximate injuries.

112.    In September 2018, Scott Favre asked Rodriguez to go to work for him in North Carolina where Hurricane Florence had recently struck at an even higher percentage of SMPF's fee than Rodriquez was promised in Puerto Rico -17.5% of the fee. Scott Favre explained that this work would be even more lucrative for Plaintiffs than the work Plaintiffs had been performing in Puerto Rico. Scott Favre directed Rodriguez to deal with Keith Ladner, a person Favre represented to be a business associate of his, with regard to the North Carolina arrangement.

113.    Pursuant to Favre's request, Rodriguez entered into an agreement with Ladner, on behalf of SMFPA. Rodriguez then left Puerto Rico and relocated to North Carolina as instructed by Favre.

114.    In December 2018, after only a few months in North Carolina, Scott Favre asked that Rodriguez not return to Puerto Rico. Favre represented to Rodriguez that "things [were] not going well" in Puerto Rico. Favre told Rodriguez that he had "not gotten paid on anything to date" and was "concerned about losing money on the island." Such representations were material to Rodriguez' planning for his future endeavors.

115.    Favre knew his representations to Rodriguez concerning SMFPA business dealings in Puerto Rico were untrue. In fact, SMFPA had already received a payment of $3,500,000.00 from a single client.

116.    Favre made these representations to Rodriguez concerning SMFPA's business in Puerto Rico with the intent that Rodriguez would not return to Puerto Rico and discover the true nature of the ongoing Puerto Rico Claims business of SMFPA, and/or the amount of fees earned by SMFPA in which Rodriguez had a 10% interest. Rodriguez was not aware that such representations were untrue and, thus he relied upon them and did not return to Puerto Rico. Because he was no longer engaged in Puerto Rico with the clients of SMFPA, Rodriguez was unaware for approximately one-year that SMFPA was actually receiving tens of millions of dollars from its Puerto Rican clients. As a result, Rodriguez suffered consequent and proximate injuries.As a direct and proximate cause of Scott Favre's individual fraud, Plaintiffs are entitled to recover damages from Scott Favre, individually. Such damages include the full benefit of the bargain and consequential damages. Plaintiffs are entitled to recover damages in tort from Scott Favre

individually, including but not limited to damages for emotional distress, lost opportunity, attorney's fees and punitive damages.

## Count 13-Fraudulent Transfer-Liability Under
## Mississippi Uniform Fraudulent Transfer Act

117.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

118.    This Count is brought pursuant to Mississippi's Uniform Fraudulent Transfer Act ("UFTA"), *Miss.CodeAnn*. § 15-3-101, et seq.

119.    Rodriguez and/or The Bridge is a creditor or of SMFPA pursuant to the UFTA.

120.    On information and belief, during and after performing under the contracts, SMFPA conveyed monies, assets and other things of value to Scott M. Favre and Cindy L. Favre, who are insiders of SMFPA under the UFTA.

121.    On information and belief, such transfers were made with the intent to hinder, delay or defraud creditors of SMFPA such as Plaintiffs.

122.    On information and belief, such transfers were made after SMFPA had been threatened with legal action.

123.    On information and belief, such transfers occurred shortly before or after a substantial debt was incurred by SMFPA, namely sums owed to Plaintiffs or others under contractual agreements regarding Puerto Rico Claims.

124.    On information and belief, Scott M. Favre and Cindy L. Favre and John and Jane Does A, B, C, D, and E are the recipients of the transfers of property and assets that were transferred from SMFPA for the purpose of evading and defrauding creditors including the

Plaintiffs.

125.    As a direct and proximate result of the violations of the UFTA by SMFPA and the actions of Scott M. Favre and Cindy L. Favre, the Plaintiffs have sustained damages.

**Count 14- Liability Under**
**Mississippi Revised Limited Liability Company Act**

126.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully stated herein.

127.    This count is brought pursuant to Mississippi's Revised Limited Liability Act, *Miss.CodeAnn.* § 79-29-601, *et seq.* and § 7-29-801, *et seq.,*

128.    Rodriquez and/or The Bridge is a creditor of SMFPA because the Plaintiffs have a valid and enforceable claim against SMFPA by virtue of the contracts and the resulting breaches.

129.    On information and belief, during and after the performance of the contract by Plaintiffs for the benefit of SMFPA in 2017 and 2018, SMFPA made distributions to its principles and or members, Scott M. Favre, Cindy L Favre, and/or John and Jane Doe Defendants A, B, C, D, and E.

130.    Plaintiffs made demand upon SMFPA by letter on September 11, 2019. Ex. "7".

131.    On information and belief, distributions were made to Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants A, B, C, D, and E during the time that SMFPA, Scott Favre and Cindy L. Favre and John and Jane Doe Defendants knew or should have known that legal action by Plaintiffs was imminent.

132.    On information and belief, distributions were made by SMFPA to Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants without making provisions for the Plaintiffs' claims.

22

133.    On information and belief, distributions were made, despite the Plaintiffs having a known claim against SMFPA and Puerto Rico fees paid to SMFPA.

134.    On information and belief, distributions continued to be made by SMFPA to Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants, despite Scott Favre and Cindy L. Favre's knowledge that SMFPA would not be able to pay its debts as they became due in the usual course of business as a result of the distributions.

135.    On information and belief, distributions were made by SMFPA to Scott Favre and Cindy L. Favre and John and Jane Doe Defendants despite knowledge that SMFPA's total assets would be less than the sum of its total liabilities as a result of these distributions.

136.    Accordingly, on information and belief, Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants were (and are) the recipients of wrongful distributions of assets from SMFPA for the sole purpose of evading and defrauding creditors, the Plaintiffs, and in violation of the Mississippi's Revised Limited Liability Act.

137.    Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants received the distributions from SMFPA with full knowledge of its liability to the Plaintiffs under the contracts and with knowledge that these transfers were made with the intent to delay, hinder, or defraud the Plaintiffs' rights to payment for their work in performance under the contracts.

138.    As a direct and proximate result of the aforesaid actions of SMFPA and its principals, Scott M. Favre and Cindy L. Favre and John and Jane Doe Defendants should be held individually responsible for an amount not to exceed the total amount of transfers made to them in violation of Mississippi's Revised Limited Liability Act.

### Count 15—Constructive Trust

139.    Each of the preceding paragraphs are incorporated herein by reference.

140.    An essential term of the Florida Agreement is that Plaintiffs would receive 2.5% of all revenue generated in Florida by SMFPA.

141.    An essential term of the Peurto Rico Agreement is that Plaintiffs would receive 10% of all revenue generated in Puerto Rico by SMFPA.

142.    SMFPA failed to pay the agreed upon percentages under both Agreements and unilaterally and wrongfully terminated its agreements with Plaintiffs after Plaintiffs had completed its contractual obligations.

143.    SMFPA continues to hold monies due and owing to Plaintiffs.

144.    Furthermore, SMFPA continues to generate revenues from Florida , to which a 2.5% fee applies, and Puerto Rico—revenues to which the 10% fee applies.

145.    An essential term of the FEMA Consulting Contract is Group $15 for each hour billed by any Consultant or Senior Consultant for time worked on any of SMFPA's FEMA grant projects in Puerto Rico.

146.    SMFPA continues to hold monies due and owing to Plaintiffs under the FEMA consulting Contract.

147.    SMFPA continues to generate revenue through the consulting services of SMFPA provided through its Consultants and Senior Consultants.

148.    In equity, Plaintiffs are entitled to a constructive trust over existing assets and all further revenues generated by SMFPA in Florida and Puerto Rico.

### Count 16 – Failure to Pay Open Account

149.    Each of the preceding paragraphs are incorporated herein by reference.

150.    On August 21, 2019 Plaintiffs sent Favre and SMFPA an invoice and written demand for $2,350,000, representing compensation due to Plaintiffs for known fees collected by SMFPA at that time. (Plaintiffs now know that additional fees had been recovered and concealed.). Written notice and demand for payment of this open account was again made, by certified mail, on September 11, 2019.

151.    More than thirty days (30) has passed since demand for payment was made and the Defendants have failed to properly pay the outstanding balance of this open account as set forth in the accounting invoice attached hereto as "Exhibit 8".

152.    Plaintiffs are therefore entitled to recovery of damages, plus attorneys' fees, pre-judgment interest, post-judgment interest, court costs, and other damages as proven at trial, all of which were foreseeable to Defendants in the event of their breach of contractual obligations to Plaintiffs.

### Count 17 - Accounting

153.    Each of the preceding paragraphs are incorporated herein by reference.

154.    Plaintiffs are entitled to, demand, and pray for an accounting of all sums recovered by Defendants for public adjusting done on behalf of entities in Puerto Rico; and of all fees paid to FEMA contractors for work done in Puerto Rico, and for all fees paid for public adjusting work done for school districts in the State of Florida after from and after September 10, 2017, and for

all transfers of monies and assets into and out of SMFPA's accounts from and after September 10, 2017.

**Count 19--Punitive Damages**

155.    Each of the preceding paragraph is incorporated herein.

156.    Pursuant to Miss. Code Ann. §11-1-65, inasmuch as the conduct of SMFPA, Scott Favre, Cindy Favre, and/or John and Jane Does A, B, C, D, and/or E constitutes willful, wanton, egregious and reckless disregard for the rights contractual and common law rights of the Plaintiffs, or either of them, an award of punitive damages is appropriate and necessary under these circumstances.

RESERVATION OF ADDITIONAL CLAIMS

157.    The Plaintiffs reserve the right to plead further upon completion of discover to state additional claims and to name additional parties to this action.

Wherefore premises considered, Plaintiffs pray that *Summons* be issued for each Defendant and that following a jury trial, they be awarded a judgment against the Defendants, jointly or severally, in an amount that will fully compensate them for all elements of damages suffered, and in an amount over that required for federal court jurisdiction in diversity of citizenship cases; that they recover punitive damages and attorney's fees; that they recover costs expended; and that they have and receive all other proper relief to which they may be entitled in the premises.

Respectfully submitted, this 9th day of April, 2021.

_____
By: David Baria
        Christopher C. Van Cleave

OF COUNSEL:

David Baria, MSB#8646
Cosmich, Simmons & Brown, PLLC
One Eastover Center
100 Vision Drive, Suite 200 (39211)
Post Office Box 22626
Jackson, Mississippi 39225-2626
T:  601-863-2100
F:  601-863-0078
E: david.baria@cs-law.com

Christopher C. Van Cleave, MSB#10796
Van Cleave Law, PA
146 Porter Avenue
Biloxi, Mississippi 39530
T:  228-432-7826
F: 228-456-0998
christopher@vancleavelaw.com
sandy@vancleavelaw.com